The plaintiff, Joanne Bullard Merritt (as administratrix of the estate of her deceased father, Bennett Franklin Bullard), appeals from a summary judgment in favor of the defendant, Willie Cosby, a co-worker of Bullard's. Merritt brought a wrongful death action pursuant to Ala. Code (1975), §25-5-11 (part of the Alabama Workmen's Compensation Act). We affirm.
On July 23, 1987, Bullard was an employee of SONAT, Inc., and on that day, while working for SONAT, Bullard was involved in an accident that led to his death. Bullard was standing behind a tractor equipped with a Bush Hog attachment (a large mower) when a co-employee of Bullard's, Jerry McCollum, started the tractor's engine. The tractor began to roll backwards and McCollum attempted to use the brakes and stop the tractor, but the tractor could not be stopped in time to prevent the blades of the mower from striking Bullard. Bullard died as a result of the injuries received from the blades.
On June 16, 1988, Merritt filed a complaint in Jefferson County Circuit Court against Ford Motor Company, Bush Hog, Inc. (a division of Allied Products Corporation, Inc.), and 54 fictitiously named defendants, advancing various theories for the June 23, 1987, death of Bullard. The case was removed to the United States District Court for the Northern District of Alabama on February 17, 1989, but was remanded to the Jefferson County Circuit Court when Melson Tractor Company, an Alabama corporation, was added as a defendant. The complaint was transferred from Jefferson County to the Russell County Circuit Court on August 10, 1989, and on October 20, 1989, defendant Cosby was substituted for fictitiously named parties 46 through 51 as "those persons, firms, or entities who willfully or intentionally caused or contributed to the death of the plaintiff's decedent."[1]
Cosby filed a motion for summary judgment and the trial court granted it on May 10, 1990. The trial court made its judgment final pursuant to Rule 54(b), Ala.R.Civ.P., on June 14, 1990, and this appeal ensued.
Merritt contends that her substitution of Cosby after the statutory period of limitations had run complies with the requirements of Rules 9(h) and 15(c), and that, therefore, the substitution relates back to the time of the filing of the complaint. Merritt argues that she stated a cause of action against a fictitiously named *Page 1244 
defendant in the complaint and that she was ignorant of Cosby's identity because, she said, at the time the complaint was filed, her knowledge was insufficient to identify Cosby as someone who should have been a party to the suit. Cosby contends that for 20 years prior to the date of the accident both Bullard and Merritt knew his identity, and, more importantly, knew his position with SONAT as Bullard's supervisor. Therefore, Cosby says, on the date of Bullard's death, Merritt possessed sufficient knowledge of a potential cause of action against Cosby. We disagree.
The case now before us is quite similar to Alexander v.Scott, 529 So.2d 951 (Ala. 1988). In Alexander, the plaintiff, seeking damages for personal injuries sustained while on the job, filed a complaint against three individuals, including her immediate supervisor; the complaint was also against a number of fictitiously named defendants. After the statutory period of limitations for negligence actions had run, the plaintiff amended her complaint, substituting two individuals for fictitiously named defendants "A," "B," "C," and "E," although at the time she filed her complaint she had known the names of the added individuals and their positions of authority with the common employer, Dexter Lock, Inc. It was not until the plaintiff began taking depositions that she became aware of certain facts that made it necessary to substitute individuals for the fictitiously named defendants. (See also, Dannelley v. Guarino, 472 So.2d 983
(Ala. 1985).)
In the case before us, Merritt had long known who Cosby was, but when the original complaint was filed she did not possess knowledge sufficient to identify Cosby as one who should be a party. It was not until Joel Phillips, president of Melson Tractor Company (the firm that performed service work on the tractor in question), was deposed on August 25, 1989, that Merritt learned of certain transactions between Melson employees and Cosby that serve as the basis of the claims against Cosby. Cosby was deposed on October 19, 1989, and the next day, October 20, 1989, he was substituted for one of the fictitiously named parties.
Cosby notes that Merritt requested of SONAT production of certain documents, under Rule 27(a), A.R.Civ.P., namely "[a]ny and all documents reflecting any and all repairs and maintenance on the Ford Tractor and Bush Hog [attachment] involved in this incident." Cosby argues that such a request demonstrates an anticipation on Merritt's part of other possible defendants and that Merritt should be precluded from adding him as a defendant after the statutory period of limitations had run.
Even if we were to accept Cosby's argument, the fact still remains that Merritt did not learn of certain conversations between Cosby and Melson Tractor employees until Joel Phillips was deposed. It was these conversations that alerted Merritt to the fact that Cosby should be made a party to the action. The record is devoid of any factual allegations that would demonstrate that, from the maintenance records produced by SONAT, Merritt could have discovered the content of discussions between Cosby and Melson Tractor employees concerning the tractor in question. Therefore, Merritt's substitution of Cosby does relate back to the original complaint under Rule 9(h), Ala.R.Civ.P., pursuant to Rule 15(c), Ala.R.Civ.P.
Ala. Code 1975, § 25-5-11, as amended, limits wrongful death actions that an employee's dependents may bring against an "officer, director, agent, servant, or employee of the same employer" to actions based on "willful conduct" that results in, or proximately causes, death, if the employee's death would be subject to compensation under the Alabama Workmen's Compensation Act. In Reed v. Brunson, 527 So.2d 102
(Ala. 1988), we set out what is considered "willful conduct":
 "Section 25-5-11(c)(1) clearly defines 'willful conduct' in terms of a 'purpose or intent or design to injure another.' The plaintiff need not show that the co-employee defendant specifically intended to injure the person who was injured. What must be shown, however, is that the co-employee defendant set out purposefully, intentionally, or by design to *Page 1245 
injure someone, and that his actions in furtherance of that purpose, intent, or design, resulted in, or proximately caused, the injury or death upon which suit was brought. In defining 'willful conduct' in these terms, the Legislature recognized the clear distinction that has developed in Alabama between 'wanton conduct' and 'willful conduct':
 " ' "Wantonness" is the conscious doing of some act or the omission of some duty under knowledge of existing conditions [while] conscious that from the doing of such act or omission of such duty injury will likely or probably result.
 " ' "Wilfulness" is the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury.
 " 'Therefore, in "wanton conduct" and "wanton injury" a purpose or intent or design to injure is not an ingredient; and where a person from his knowledge of existing conditions and circumstances is conscious that his conduct will probably result in injury, yet, with reckless indifference or disregard of the natural or probable consequences, but without having an intent or design to injure, he does the act, or fails to act, he would be guilty of wantonness, but not of wilfulness.
 " 'But, in "wilful conduct" and "wilful injury" a purpose or intent or design to injure is an ingredient; and where a person, with knowledge of the danger or peril to another consciously pursues a course of conduct with a design, intent, and purpose of inflicting injury, then he is guilty of wilfulness.' [Citations omitted.]
". . . .
 ". . . [Therefore,] we believe the Legislature sought to insure that these kinds of cases would not be submitted to a jury without at least some evidence tending to show either 1) the reason why the co-employee defendant would want to intentionally injure the plaintiff, or someone else, or 2) that a reasonable man in the position of the defendant would have known that a particular result (i.e., injury or death) was substantially certain to follow from his actions. (A purpose, intent, or design to injure another was not intended to be reasonably inferable from evidence showing only knowledge and appreciation of a risk of injury or death short of substantial certainty that injury or death would occur.)"
527 So.2d at 119-20. (Emphasis in original.)
Merritt contends that Cosby is guilty of willful conduct as defined by § 25-5-11(c) because, she says, Cosby, or a reasonable person in his position, would have known that a particular result (injury or death) was substantially certain to follow from his actions. The "actions" in question are the result of a March 31, 1987, conversation between Cosby and employees of Melson Tractor. The tractor in question was taken to Melson Tractor for repairs on March 31, 1987. It was discovered that the backing plates for the brakes (metal plates that shield the brakes from foreign material) for both rear wheels had been damaged, thus allowing large amounts of sand, dirt, and other debris to come in[2] and reducing the effectiveness of the brakes.
The Melson Tractor employees were so concerned about the condition of the backing plates that they asked Cosby, who was responsible for repair and maintenance of SONAT tractors in his district, to come by and inspect the plates. Cosby did go by, and, after inspecting the plates, had them straightened, even though Melson employees recommended that they be replaced. Cosby knew that the tractor was going to be used on terrain where mud, water, and sand were prevalent, that debris around the brakes reduced their effectiveness, and that the tractor would be in use around other SONAT employees.
The facts of this case simply do not support a finding of willfulness or willful conduct. At best, the facts establish wantonness, *Page 1246 
but a recovery for wantonness is not allowed under the language of § 25-5-11(c)(1). See Reed. Landers v. O'Neal Steel,Inc., 564 So.2d 925, 927 (Ala. 1990). The evidence would probably establish that Cosby was guilty of negligence, but negligence, too, is insufficient to satisfy §25-5-11(c)(1). See Reed. Williams v. Price,564 So.2d 408, 410 (Ala. 1990).
There is no question that Cosby knew about the defective backing plates and knew that defective plates would allow debris to come in and reduce the effectiveness of the brakes. Nor is there any question that Cosby, upon his discovery of the defective condition of the plates, failed to have them replaced. The question is, did Cosby (in failing to replace the backing plates) consciously pursue a course of conduct with a design, intent, and purpose of inflicting injury?
The evidence indicates that Cosby did not replace the plates because the tractor was going to be transferred to another SONAT district and he did not want to spend money on a tractor that was not to be used in his district. It was not Cosby's design, intent, and purpose to inflict injury upon Bullard by not replacing the plates; it was his design, intent, and purpose to avoid spending money on a tractor that was not going to be used in his district. This fact will not support a finding of a design, intent, or purpose of inflicting injury. Nor does it meet the "reasonable man" prong of Reed
— i.e., it would not support a finding that a reasonable man in the position of the defendant would have known that a particular result was substantially certain to follow from his actions. There is no evidence that Bullard's death was substantially certain to follow from Cosby's actions.
In summary, the evidence submitted establishes that, as a matter of law, the death of Bullard was not caused by any willful conduct (within the meaning of § 25-5-11(c)) on Cosby's part. Thus, the action brought by Merritt, the personal representative, is barred, and the trial court properly entered the summary judgment for Cosby. The judgment is therefore due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
KENNEDY, J., dissents.
[1] This addition of Cosby as a party defendant was doneafter the two-year statutory period of limitations allowed for "[a]n action by a representative to recover damages for wrongful act, omission or negligence causing the death of the decedent." Ala. Code 1975, § 6-2-38. Therefore, in order for Merritt's action against Cosby not to be time-barred, the substitution must relate back under Rule 9(h), Ala.R.Civ.P., pursuant to Rule 15(c), Ala.R.Civ.P. Alexander v.Scott, 529 So.2d 951, 952 (Ala. 1988).
[2] At deposition, Joel Phillips stated that a double handful of sand was pulled out of the brake housing, and that sand was not normally found in the brake housing.